**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CRIMINAL NO.  3:23-CR-149** |
| | : | |
| **DAMIEN BOLAND,** | : | |
| **ALFRED ATSUS, AND** | : | |
| **JOSEPH ATSUS.** | : | **JUDGE MANNION** |
| | : | |
| Defendants. | : | **ELECTRONICALLY FILED** |

**BRIEF IN SUPPORT OF DEFENDANTS DAMIEN BOLAND, ALFRED
ATSUS, AND JOSEPH ATSUS' JOINT MOTION TO DISMISS COUNT 1
OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE**

**INTRODUCTION**

NOW COMES the Defendants Joseph Atsus, Alfred Atsus, and Damien
Boland, by and through their undersigned counsel, filing the following Brief in
Support of Joint Motion to Dismiss Count 1 of the Indictment pursuant to Federal
Rule of Criminal Procedure 12(b)(3)(B)(v), and it support thereof, it is averred as
follows:

The Indictment in this case alleges a burglary ring spanning two decades.
The most culpable individual in the burglary ring is unindicted (but separately
charged) coconspirator Thomas Trotta. Trotta committed each of the burglaries
alleged in the Indictment and is the Government's main cooperating witnesses. The
second most culpable individual, according to the Government, is Nicolas
Dombek.

1

The Government alleges that Dombek was a father figure for Trotta. According to Trotta, he committed countless burglaries, thefts and other offenses with Dombek since Trotta was a little boy. For decades, Dombek plotted crimes, and Trotta executed Dombek's schemes.

Dombek's alleged bad acts are more prevalent and more serious than those allegedly committed by his codefendants Joseph Atsus, Alfred Atsus, and Damien Boland. Dombek is alleged to have destroyed evidence, threatened witnesses, and conspired to poison and kill a Government witness.

These inflammatory allegations, coupled with the fact that Count 1 of the Indictment charges a conspiracy that is both wide ranging and not clearly defined, requires the Court to dismiss Count 1 of the Indictment.

## PROCEDURAL HISTORY

### A.    Indictment

On June 6, 2023, a thirteen-count Indictment was entered against Defendants Joseph Atsus, Alfred Atsus, Damien Boland, and Nicholas Dombek. (ECF 1.)

Count 1 of the Indictment charges a wide-ranging conspiracy (18 U.S.C. §371) to Commit Theft of Major Artwork (18 U.S.C. § 668(b)(1)), Concealment and Disposal of Major Artwork (18 U.S.C. § 668(b)(2)), and Transportation of Stolen Property ((18 U.S.C. § 2314)) spanning from August 1999 to September 2019.

Counts 2 and 3 of the Indictment charges Defendants Joseph Atsus, Alfred Atsus, Damien Boland, and Nicholas Dombek with aiding and abetting Theft of Major Artwork and Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's November 18, 2005 burglary of the Everhart Museum, located in Scranton, Pennsylvania.

Count 4 of the Indictment charges Defendants Joseph Atsus, Alfred Atsus, Damien Boland, and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's June 28, 2006 burglary of the Space Farms: Zoo and Museum ("Space Farms"), located in Wantage, New Jersey.

Counts 5 and 6 of the Indictment charges Defendant Damien Boland with aiding and abetting Theft of Major Artwork and Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's July 2, 2010 burglary of the Lackawanna County Historical Society, located in Scranton, Pennsylvania.

Count 7 of the Indictment charges Defendants Joseph Atsus, Alfred Atsus, Damien Boland, and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's March 2, 2011 burglary of the Ringwood Manor, located in Ringwood, New Jersey.

Count 8 of the Indictment charges Defendants Damien Boland and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's May 6, 2012 burglary of the USGA Golf Museum & Library ("USGA Golf Museum"), located in Liberty Corner, New Jersey.

Count 9 of the Indictment charges Defendants Damien Boland and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's December 18, 2012 burglary of the Harness Racing Museum and Hall of Fame ("Harness Racing Museum"), located in Goshen, New York.

Count 10 of the Indictment charges Defendants Damien Boland and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's September 13, 2013 burglary of the National Museum of Racing and Hall of Fame ("Racing Museum"), located in Saratoga Springs, New York.

Count 11 of the Indictment charges Defendants Joseph Atsus and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's October 15, 2014 burglary of the Yogi Berra Museum & Learning Center ("Yogi Berra Museum"), located in Little Falls, New Jersey.

Count 12 of the Indictment charges Defendants Damien Boland and Nicholas Dombek with aiding and abetting Concealment of Disposal of Major Artwork in relation to unindicted conspirator Thomas Trotta's July 26, 2016 burglary of the Roger Maris Museum, located in Fargo, North Dakota.

Count 13 of the Indictment charges Defendant Nicholas Dombek with aiding and abetting Interstate Transportation of Stolen Property in relation to unindicted conspirator Thomas Trotta's June 18, 2018 burglary of the Bertoni Gallery, located in Chester, New York.

## B.    Arraignments and Detention/Release Hearings

Shortly after the Indictment was entered, Defendants Joseph Atsus, Alfred Atsus, and Damien Boland were arraigned and released. On June 13, 2023, Damien Boland was arraigned, entered a plea of not guilty, and was released on his own recognizance. (ECF 18.) On June 15, 2023, Joseph Atsus and Alfred Atsus were arraigned, entered a plea of not guilty, and were released on their own recognizance. (ECF 33, 28.)

Defendant Dombek, in contrast, went into hiding and was not located until he turned himself in nearly six (6) months later. On January 2, 2024, Nicholas Dombek was arraigned, entered a plea of not guilty, and was detained pending further proceedings. (ECF 58.)

## FACTUAL BACKGROUND

**A.      Allegations Against Boland and Atsus Brothers**

Counts 2 through 12 of the Indictment allege substantive offenses pursuant to 18 U.S.C. § 668 (Major Art Theft), against Defendants Joseph Atsus, Alfred Atsus, and Damien Boland. These allegations involve aiding and abetting Thomas Trotta in the planning, execution of burglaries of the Everhart Museum, Space Farms, the Lackawanna County Historical Society, Ringwood Manor, USGA Golf Museum, Harness Racing Museum, Racing Museum, Yogi Berra Museum, and Roger Maris Museum. These counts also allege the concealment and disposal of the proceeds from these burglaries. Temporally, these burglaries occurred between 1999 and 2016.

Count 1 is far broader. It alleges a conspiracy, which not only includes the substantive offense alleged in Counts 2 through 12, but also several other burglaries and attempted burglaries committed by Trotta. Count 1 also includes overt acts, which do not involve allegations of Major Art Theft, from: the Franklin Mineral Museum, located in Franklin, New Jersey; the Antiques Exchange, an antiques store located in Hawley, Pennsylvania; Cade's Coins, a store located in Exeter, Pennsylvania; the Bertoni Gallery, located in Chester, New York; and Basic Irish Luxury, a store located in Newport, Rhode Island. Trotta committed

these offenses between 2017 and 2018. Joseph Atsus, Alfred Atsus, and Damien Boland are not alleged to have been involved in these burglaries.

### B.    Allegations Against Defendant Dombek

The allegations against Defendant Dombek are even broader. According to Trotta's statements, Trotta and Dombek have been committing burglaries and other thefts together since Trotta was a young boy. Dombek lived with Trotta and was a father figure to him. The discovery provided by the Government indicates that Trotta and Dombek combined to commit hundreds, if not thousands, thefts. It is alleged that Trotta and Dombek conspired to burglarize homes and automated teller machines (ATMs) across Lackawanna County.

According to the Government, Dombek was the mastermind of the burglary ring alleged in the Indictment. He would select target locations for Trotta to burglarize and advise him which items are most valuable and worth stealing. Dombek would manufacture equipment for Trotta to utilize in the burglaries. Following the burglaries, Dombek used his knowledge of metallurgy to melt down the pilfered precious metals and extract gemstones from the stolen objects.

Further, it is alleged that Dombek not only conspired with Trotta to commit thefts going beyond the scope of what is contained in the Indictment, it is also alleged that Dombek destroyed evidence, threatened witnesses, and conspired to poison and kill a witness believed to be cooperating with the Government.

Specifically, it is alleged that Dombek discussed obtaining a fatal fentanyl dose to kill a cooperating witness. Dombek also separately discussed using a poisonous plant to kill the cooperating witness. During a search of Dombek's property, false hellebore, a poison plant, was seized.

## C.     The Alleged Conspiracy

As noted above, Count 1 of the Indictment charges a wide-ranging conspiracy (18 U.S.C. §371) to Commit Theft of Major Artwork (18 U.S.C. § 668(b)(1)), Concealment and Disposal of Major Artwork (18 U.S.C. § 668(b)(2)), and Transportation of Stolen Property ((18 U.S.C. § 2314)) spanning from August 1999 to September 2019.

Interestingly, according to Trotta's own statements, he was involved in every one of the twenty-two (22) overt acts alleged within the Indictment. Furthermore, these alleged overt acts often occurred with long gaps of time between alleged activity. In fact, the first alleged overt act of the alleged conspiracy takes place in August of 1999 and involved only Joseph Atsus and Trotta. The overt actions alleged to have occurred at Keystone College are arguably not within the statutory confines of the substantive charges found throughout the remainder of the Indictment.

Furthermore, the next overt action alleged by the Government does not take place until over **six (6) years** after the alleged incident at Keystone College. This

incident allegedly involved the Everhardt Museum in November of 2005 and involved Trotta, Dombeck, Alfred Atsus, Jospeh Atsus, and Boland.

The next alleged overt action by the Government does not take place for approximately seven (7) months after the alleged actions involving the Everhardt Museum. This incident allegedly took place in June of 2006 and involved the Space Farms Zoo and Museum as and involved Trotta, Dombeck, Boland, Joseph Atsus and Alfred Atsus.

The next alleged overt action does not take place for **four (4) years** after the alleged actions involving Space Farms Zoo and Museum. This incident allegedly took place in July of 2010 involving the Lackawanna Historical Society as charged in Count 6 of the Indictment and involved Trotta and Boland.

The next alleged overt actions do not take place until eight (8) months later after the alleged actions involving the Lackawanna Historical Society. The next allegations involve the Scranton County Club and Ringwood Manor. It should be noted that the Scranton Country Club cannot be qualified as a museum as required by statute. The incident that allegedly took place in March of 2011 involving Ringwood Manor as charged in Count 7 of the Indictment involved Trotta, Dombek, Boland, Alfred Atsus, and Jospeh Atsus. The non charged actions at the Scranton Country Club allegedly involved Trotta, Joseph Atsus and Boland.

Four (4) months later, in July of 2011, the government alleges that Trotta, Dombeck and Joseph Atsus were involved in alleged overt action at the Sterling Hill Mining Museum.  No additional counts within the Indictment involve these alleged overt actions.

**Ten (10) months** after the alleged actions involving the Sterling Hill Mining Museum, the Government alleges that in May of 2012, Dombeck, Boland and Trotta were engaged in overt actions involving the USGA Golf Museum & Library.

In Trotta's own statements, Trotta acknowledges that at this time, his focus became stealing trophies.

It is alleged that seven (7) months after the actions alleged to have occurred involving the USGA Golf Museum & Library that Dombeck, Trotta and Boland engaged in overt actions in December of 2012 involving the Harness Racing Museum and Hall of Fame. This incident allegedly involved Dombeck, Trotta, Boland, and Alfred Atsus.

It should be noted that from this alleged incident forward, Alfred Atsus is not alleged to be involved in any additional overt actions of the conspiracy.

The next allegation involves an incident taking place eight (8) months later involving the National Racing Museum and Hall of Fame and involved Dombeck, Boland and Trotta.

After those allegations, the next allege overt actions takes place in October of 2014, **over one (1) year** from the previous alleged overt action involving the Yogi Berra Museum & Learning Center. This incident involved Dombeck, Trotta, and Joseph Atsus.

Jospeh Atsus is not alleged to have any involvement in further overt actions past October of 2014.

The next allegations of overt actions do not take place until **over one (1) year** later and involve the International Boxing Hall of Fame and the Hillwood Estate, Museum and Gardens in November and December of 2015. Boland, Trotta and Dombeck are alleged to be involved in these incidents.

Again, involving only Boland, Trotta and Dombeck is an alleged incident involving the Roger Maris Museum is not alleged to occur until July of 2016, eight (8) months after the last alleged overt action.

Between July of 2016 and April of 2019, there is no mention of the Atsus brothers or Boland being involved or having knowledge of any of the alleged overt activity involving Trotta, Dombeck and two other unnamed coconspirators.

In April of 2019, **three (3) years and nine (9) months** from any previous allegation of Boland's involvement he is alleged to be involved with Dombeck, Trotta, and Conspirator #5 with overt actions alleged to revolve around activity with the Harvard Mineralogical & Geological Museum.

11

Again, Alfred Atsus is not mentioned in the Indictment for any actions since December of 2012 and Joseph Atsus is not alleged to have any further involvement since October of 2014.

## LEGAL STANDARD

Under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for failure to state an offense. An indictment must set forth each element of the offense charged and provide sufficient detail to allow the defendant to prepare a defense and invoke a double jeopardy clause if necessary. *See, Hamling v. United States*, 418 U.S. 87, 117 (1974).

## STATEMENT OF QUESTIONS INVOLVED

QUESTION PRESENTED:    Whether Count 1 of the Indictment should be dismissed as it alleges multiple conspiracies which were not charged within the statute of limitations?

SUGGESTED ANSWER:    Yes.

## ARGUMENT

**A. Improper Joinder of Multiple Conspiracies**

Count 1 of the Indictment improperly joins multiple distinct conspiracies as a single conspiracy violating Rule 8(b) of the Federal Rules of Criminal Procedure, which permits the joinder of defendants only if they are alleged to have participated in the same act or transaction, or in the same series of acts or

transactions constituting an offense. In this case, the multiple conspiracies alleged, spanning over twenty (20) years lack sufficient factual allegations to establish that the multiple conspiracies alleged are part of a single, overarching conspiracy. Moreover, some of the alleged overt acts alleged in the Indictment are not with the jurisdiction of the United States to prosecute. Furthermore, many of the Defendants are not alleged to agree and/or participate at all for several years during the span of time alleged by the government.

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks,* 515 F.2d 112, 116 (3d Cir. 1975). An indictment with duplicitous counts implicates the following concerns: first, "a general verdict [from a duplicitous indictment] does not reveal exactly which crimes the jury found the defendant had committed," *United States v. Gomberg,* 715 F.2d 843, 845 (3d Cir.1983), *cert. denied,* 465 U.S. 1078, 104 S. Ct. 1439, 1440, 79 L. Ed. 2d 760 (1984); second, a duplicitous indictment may prejudice the defendant "with respect to evidentiary rulings during the trial, since evidence admissible on one offense might be inadmissible on the other," *Starks,* 515 F.2d at 116; and third, in a general verdict based upon two or more separate offenses joined in a single count, there is no way of knowing whether the jury was unanimous with respect to any of the offenses. *Id.* at 117.

Count 1 of the Indictment alleges several different incidents that the Government contends were an overarching conspiracy. The moving Defendants contend that each of these incidents, or at a minimum, clusters of these incidents, as alleged are allegations of separate and distinct conspiracies.

Under Third Circuit case law, the factors for whether a single conspiracy is present are identical to those that determine whether a single scheme exists under a fraud statute. *United States v. Maker,* 751 F.2d 614, 625 n. 35 (3d Cir.1984) (citing *United States v. Camiel,* 689 F.2d 31, 36 (3d Cir. 1982), *cert. denied,* 472 U.S. 1017, 105 S. Ct. 3479, 87 L. Ed. 2d 614 (1985)). The court of appeals has developed the following factors for variance cases to determine whether a single conspiracy exists:

1) whether there existed common or similar goals;

2) whether there existed common or similar methods; and

3) whether there existed an overlapping of participants.

*United States v. Schurr,* 775 F.2d 549, 556 (3d Cir.1985); *United States v. De Peri,* 778 F.2d 963 (3d Cir.1985); *United States v. Maker,* 751 F.2d 614 (3d Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S. Ct. 3479, 87 L.Ed.2d 614 (1985). The court of appeals has considered a fourth factor: whether the agreement or scheme contemplated a continuity in purpose, performance, and result. *United*

*States v. Barr,* 963 F.2d 641, 649 (3d Cir. 1992), *cert. denied,* 506 U.S. 1033, 113 S. Ct. 811, 121 L. Ed. 2d 684 (1992); *Maker,* 751 F.2d at 625 n. 36.

With respect to the first and second factors, while all of the incidents alleged involve theft of items, each incident had separate and distinct goals of what would be taken and how it would be taken. Not all of those named in the alleged conspiracy knew of the others and several different methods for achieving the goal of the alleged thefts were alleged throughout Count 1.

With respect to overlapping participants, it is undisputable that the allegations allege that there is overlap between several of the participants. However, it should be noted that not all of the alleged participants knew of each other. Additionally, several of the participants, specifically with respect to the moving Defendants, Alfred, and Jospeh Atsus, were clearly no longer part of any of the conspiracy ten (10) and eight (8) years respectively prior to the filing of the Indictment.

Most important in the analysis here is the fourth factor, "whether the agreement or scheme contemplated a continuity in purpose, performance, and result." Here, as pointed out above, there were several clear time gaps in the allegations regarding this overarching conspiracy.

To start the Government's contention that this conspiracy started in 1999 with the incident alleged revolving around Keystone College is not within the

jurisdiction of the Government to prosecute.  Furthermore, the next allegation of any overt activity of the alleged conspiracy happens **six (6) years** later.

While there are significant time gaps between most of the alleged incidents, there are at least three additional distinct periods of time that clearly represent allegations of separate and distinct conspiracies.

There are allegations revolving around the Everhardt Museum that take place in November of 2005. These allegations involve Trotta, Dombeck, Alfred Atsus, Joseph Atsus and Boland. Additionally in this second conspiracy was the incident that allegedly took place in June of 2006 revolving around the Space Farms Zoo and Museum and involved Trotta, Dombeck, Boland, Joseph Atsus, and Alfred Atsus.

There was no alleged activity at this point for **four (4) years**. It is the moving Defendants contention the goals of the initial alleged conspiracy were concluded.

The next significant events involve the allegations regarding the incidents involving the Lackawanna Historical Society, the Scranton County Club, Ringwood Manor, Sterling Hill Mining Museum as noted above.  These incidents are alleged to have occurred between July of 2010 and July of 2011.

Again, a significant time gap in the allegations of **ten (10) months** elapses between those incidents and the next allegation of action by the conspirators.  The

allegations regarding the USGA Golf Museum & Library are alleged to have occurred in May of 2012. Additionally, in Trotta's own statements, he states that at this time he began focusing on stealing trophies. Further evidence of a separate and distinct conspiracy.

There are also a **one (1) year** gap in time between the allegations revolving around the National Racing Museum and Hall of fame and the allegations regarding the Yogi Berra Museum & Learning Center in October of 2014.

There is an additional **one (1) year** gap in time between the Yogi Berra Museum allegations and allegations involving the International Boxing Hall of Fame and the Hillwood Estate, Museum and Gardens alleged to have taken place in November and December of 2015.

Between July of 2016  and April of 2019, **three (3) years and nine (9) months,** Boland is not mentioned or alleged to have been involved or have knowledge of the alleged incidents that took place during that time frame. Additionally, there is no mention of Alfred Atsus being involved any time after December of 2012 and no mention of Jospeh Atsus being involved any time after October of 2014.

It is clear that there are several separate and distinct conspiracies alleged in Count I of the indictment and it should be dismissed on that basis.

**B. Effect on Statute of Limitations**

The improper joinder of multiple conspiracies also impacts the statute of limitations. If the indictment includes acts beyond the limitations period for some conspiracies, those charges must be dismissed.

Under 18 U.S.C. § 3282, non-capital offenses must be indicted within five years. The Third Circuit in *United States v. Reitmeyer*, 356 F.3d 1313 (3rd Cir. 2004), highlighted that the limitations period begins when the crime is complete, not when it is discovered. This principle applies to conspiracy charges, emphasizing that any acts outside the five-year window are not chargeable.

A statute of limitations "limit[s] exposure to criminal prosecution to a certain fixed period of time following the occurrence of" criminal acts. *United States v. Midgley*, 142 F.3d 174, 177 (3d Cir. 1998), *citing Toussie v. United States,* 397 U.S. 112, 114, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). Limitations are "designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 114–15, 90 S.Ct. at 860. "Limitations statutes ... are intended to foreclose the potential for *inaccuracy* and *unfairness* that stale evidence and dull memories may occasion in an unduly delayed trial." *United States v. Levine,* 658 F.2d 113, 127 (3d Cir.1981) (emphasis in original).

Furthermore, where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the three years prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period. *Grunewald v. United States*, 353 U.S. 391, 396–97, 77 S. Ct. 963, 970, 1 L. Ed. 2d 931 (1957).

Here, it is clear that there were multiple conspiracies throughout the alleged twenty (20) year period. There were no additional overt acts in the furtherance of the earlier conspiracies that fall outside the limitations period within the three (3) years prior to the indictment. Those conspiracies are barred by the statute of limitations.

Additionally, because each of these incidents were separate and distinct, or at the very least several separate and distinct groups of activity, it should be noted that after the similar purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that conspiracy was kept a secret and that conspirators took acre to cover up their crime in order to escape detection and punishment, since allowing such conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in an awesome widening of the scope of conspiracy prosecutions and would extend life of conspiracy indefinitely. *See Grunewald,* 353

U.S. 391; *Krulewitch v. United States*, 336 U.S. 440 (1949); *Lutwak v. United States*, 344 U.S. 604 (1953).

Even if the Government were able to prove the allegations taking place outside the statute of limitations, they cannot utilize the fact that the conspiracy was kept secret or concealed to extend the statute of limitations. In other words, the fact that the Government's knowledge of these conspiracies only came to light based on an investigation and cooperating witnesses that brought these "secret" conspiracies to their attention, the fact that the Defendants allegedly concealed their involvement in these separate and distinct conspiracies cannot but utilized by the Government to argue that statute of limitations is tolled for those separate and distinct conspiracies that occurred outside the statute of limitations.

Here, because the alleged acts in Count I of the Indictment are separate and distinct conspiracies, any act alleged to have occurred prior to June 6, 2018 would have occurred outside the statute of limitations. As such, Count I of the Indictment is improper as it charges the Defendants for alleged criminal activity that happened outside the statute of limitations. The Government's attempt at an end-around indictment for alleged activity otherwise outside of the statute of limitations must not be allowed. As such Count I of the Indictment should be dismissed.

## **CONCLUSION**

Based on the above the alleged acts in Count 1 of the Indictment must be deemed to be several alleged separate and distinct conspiracies. As such, any of the alleged acts and/or separate and distinct conspiracies that occurred prior to June 6, 2018 are outside the statute of limitations and must be dismissed. The fact that the completion of these alleged separate and distinct conspiracies was allegedly concealed by the actors does not toll the statute of limitations.

As such, Count I of the Indictment includes improper joinder of alleged conspiracies outside of the statute of limitations and therefore must be dismissed.

WHEREFORE, the moving Defendants respectfully request this Honorable Court dismiss Count I of the Indictment.

Respectfully submitted,

/s/Jason J. Mattioli
Jason J. Mattioli
Michael J. Ossont
*Attorney for Defendant*
*Alfred Atsus*

/s/Matthew L. Clemente
Matthew L. Clemente
*Attorney for Defendant*
*Damien Boland*

/s/ Patrick A. Casey
Patrick A. Casey
*Attorney for Defendant*
*Joseph Atsus*

21

## CERTIFICATE OF COMPLIANCE
## <u>PURSUANT TO LOCAL RULE 7.8</u>

This brief complies with local Rule 7.8(b). The brief contains 4,292 words.


/s/ Patrick A. Casey
Patrick A. Casey

## <u>CERTIFICATE OF SERVICE</u>

I, Patrick A. Casey, hereby certify that a true and correct copy of the foregoing Brief in Support of Defendants Damien Boland, Alfred Atsus, and Joseph Atsus' Motion to Dismiss Count 1 of the Indictment for Failure to State an Offense was served upon the counsel of record via the Court's ECF system on this 12th day of July, 2024:

James Buchanan, Esquire
United States Attorney's Office
235 North Washington Avenue
Suite 311
Scranton, PA 18501

Matthew L. Clemente, Esquire
Matthew L. Clemente, Attorney at Law
88 North Franklin Street, 2nd Floor
Wilkes Barre, PA 18640

Jason J. Mattioli, Esquire
Michael J. Ossont, Esquire
The Mattioli Law Firm
425 Biden Street, Suite 300
Scranton, PA 18503

Ernest D. Preate Jr., Esquire
120 South State Street
Clarks Summit, PA 18411

/s/ Patrick A. Casey
Patrick A. Casey