**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **United States of America,** | : | **Criminal No. 3:23-CR-149** |
| **v.** | : | **(JUDGE MANNION)** |
| **Joseph Atsus,** | : | |
| **Defendant.** | : | |

## MEMORANDUM

Presently before the court is the government's motion to disqualify Attorney Patrick A. Casey and in turn his law firm, Myers, Brier, & Kelly, LLP, as counsel for Defendant Joseph Atsus. (Doc. 67.) The matter has been fully briefed and the court held oral argument on August 13, 2024. The government argues that disqualification is appropriate because Attorney Casey previously represented Arthur Byron Phillips, one of Defendant's alleged victims, in the initial investigation into one of the many crimes now allegedly committed by Defendant. However, Attorney Casey's representation of Mr. Phillips terminated nearly 18 years ago on September 7, 2006, and Mr. Phillips passed away nearly 16 years ago on November 13, 2008. Accordingly, and for the reasons stated herein, the government's motion will be **DENIED**, subject to Defendant's adequate waiver of any possible conflicts of interest faced by his counsel.

## I.   <u>BACKGROUND</u>

On or about the night of November 18, 2005, two paintings, *La Grande Passion* by Andy Warhol, and *Springs Winter* purportedly by Jackson Pollack, were stolen from the Everhart Museum in Scranton, Pennsylvania. The latter painting was owned by Arthur Byron Phillips and loaned to the Everhart before the theft. On November 22, 2005, the government subpoenaed Mr. Phillips to testify before a federal grand jury seated in Scranton. The subpoena ordered Mr. Phillips "to appear and testify before the Grand Jury of the United States District Court" on December 6, 2005, and to "bring with [him] [a]ll documents relating to the purchase and ownership of a painting by Jackson Pollack entitled *Springs Winter*." The FBI contacted Mr. Phillips by telephone that same day. During this call Mr. Phillips stated that he purchased the painting directly from Pollack when he was a teenager, possibly in 1955. He further advised that he did not have any insurance covering the painting and the museum's insurance would not cover the loss because he could not prove the painting was authentic.

The FBI served Mr. Phillips with the grand jury subpoena on December 5, 2005, but he was not called to testify. On December 15, 2005, the FBI recontacted Mr. Phillips, who reportedly advised that he actually purchased the painting between 1951 and 1954 but still could not authenticate it or

prove it maintained any value. Due to his continued inability to authenticate *Springs Winter* the FBI viewed Mr. Phillips as a subject but not the target of the investigation into the Everhart theft and requested he take a polygraph test.

Subsequently, Mr. Phillips retained Attorney Casey of the law firm, Myers, Brier, & Kelly, LLP, on February 27, 2006. Mr. Phillips never took a polygraph test and ultimately never testified before the Grand Jury or in any proceeding concerning the government's investigation of the Everhart theft. Attorney Casey and his firm's representation of Mr. Phillips was then terminated on September 7, 2006. On February 28, 2007, Mr. Phillips directly contacted the FBI, informing its agents that he was no longer represented by Attorney Casey or his firm and wanted to provide new information regarding the theft of his painting. Specifically, Mr. Phillips claimed to have received a call earlier that day from an individual who offered to sell *Springs Winter* back to him for $1,000,000. The caller described the painting in detail to Mr. Phillips, including a gallery stamp with the name "Betty Parson" which would only be known from viewing the back of the painting. Nonetheless the painting was not recovered before Mr. Phillips passed away on November 13, 2008.

In 2019, Thomas Trotta agreed to proffer with the FBI and representatives from the United States Attorney's Office for the Middle District of Pennsylvania. During these proffers, Trotta alleged that on the night of November 18, 2005, he, Damien Boland, and Defendant, drove to the Everhart Museum, where Trotta broke in and stole *La Grande Passion* and *Springs Winter*. Trotta further alleged that the paintings were later taken to the residence of Defendant and his brother Alfred Atsus in Union, New Jersey, and he, Boland, and the Atsus brothers called Mr. Phillips on February 28, 2007. Trotta alleged that he last saw *Springs Winter* at the Atsus residence sometime around 2017.

On June 6, 2023, a federal grand jury sitting in Scranton, filed a thirteen-count indictment, against Defendant Joseph Atsus, his brother Alfred Atsus, Damien Boland, and Nicholas Dombek charging them with *inter alia* theft of major artwork related to burglaries at 14 different cultural institutions including the Everhart Museum. However, *Springs Winter* is referenced only once in the indictment as an overt act comprising the conspiracy count. The indictment does not identify *Springs Winter* as an object of cultural heritage stolen by Defendants, nor does it identify it as "any property . . . involved in such offenses" subject to forfeiture. The indictment does not make any reference to Arthur Byron Phillips.

- 4 -

On June 14, 2023, Attorney Casey entered his appearance on behalf of Defendant Joseph Atsus. Three months later in September 2023, the government, after reviewing FBI reports from the initial investigation into the Everhart theft, notified Attorney Casey of the alleged conflict between his current and former clients. On January 11, 2024, Attorney Casey wrote a letter to the government that based on his review of relevant materials, and consultation with outside counsel, no actual or potential conflicts existed regarding his representation of Defendant. Nonetheless on March 1, 2024, the government filed under seal its present motion to disqualify Attorney Casey and his firm pursuant to Pennsylvania Rules of Professional Conduct 1.9 (conflict between former client and current client) and 1.7 (material limitation conflict). (Doc. 67.) On August 13, 2024, the court heard oral arguments on this motion. (Doc. 122.) After six continuations, which have already delayed trial by over a year, jury selection in this case is scheduled to begin on October 28, 2024, and all counsel of record including Attorney Casey have already been attached for trial on that date. (Doc. 124.)

## II.   **LEGAL STANDARD**

"The Sixth Amendment to the Constitution guarantees that 'in all criminal prosecutions, the accused shall enjoy the right . . . to have the

Assistance of Counsel for his defense.'" *Wheat v. United States,* 486 U.S. 153, 158 (1988) (quoting U.S. Const. Amend. VI). The Third Circuit has made clear that "[t]he Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Moscony,* 927 F.2d 742, 748 (3d Cir. 1991) (citations omitted). "However, another right is derived from the right to effective assistance of counsel, for the 'the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.'" *Moscony,* 927 F.2d at 748 (citing *Powell v. Alabama,* 287 U.S. 45, 53 (1932)). "Thus, a presumptive right to the counsel of one's choice has been recognized as arising out of the Sixth Amendment." *Id.* (citing *Wheat,* 486 U.S. at 159). However, this presumption is only that, and may be overcome "not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat,* 486 U.S. at 164; *see also Moscony,* 927 F.2d at 750.

The Third Circuit has found that "the typical scenario where disqualification becomes necessary entails an attorney's attempt to represent multiple defendants in the same prosecution." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999). The court, however, has also

- 6 -

"recognized that conflicts arise where a 'defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness.'" *Id.* (quoting *Moscony*, 927 F.2d at 749). Indeed, "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony*, 927 F.2d at 750 (internal citations omitted).

Still the Third Circuit recognizes that determining whether such a conflict exists "must be left primarily to the informed judgment of the trial court." *Wheat,* 486 U.S. at 164. But the court has noted, this "is no simple task. 'The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.'" *United States v. Voigt,* 89 F.3d 1050, 1076 (3d Cir. 1996) (quoting *Wheat,* 486 U.S. at 162–63).

When reviewing a district court's decision whether or not to disqualify on conflict-of-interest grounds, the Third Circuit performs a two-step inquiry to determine whether the disqualification was proper. First, the court of appeals "exercise[s] plenary review to determine whether the district court's disqualification was arbitrary— 'the product of a failure to balance proper

considerations of judicial administration against the right to counsel.'" *Stewart,* 185 F.3d at 120 (3d Cir. 1999) (quoting *Voigt,* 89 F.3d at 1074). Where the trial court "makes a reasoned determination on the basis of a fully prepared record, its decision will not be deemed arbitrary." *Voigt,* 89 F.3d at 1075 (internal quotation omitted). "Formal findings of fact are not required." *Id.* at 1076.

If the district court's determination is held not arbitrary, the court of appeals then considers whether the district court abused its discretion in disqualifying the attorney. *Stewart,* 185 F.3d at 120. Where there has been an erroneous deprivation of counsel, a defendant need not additionally show prejudice and this error is not subject to review for harmlessness. *United States v. Gonzalez–Lopez,* 548 U.S. 140, 147–148, (2006) ("We have little trouble concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error." (internal quotations omitted)).

Where a defendant chooses to waive any conflict of interest faced by his or her attorney in order to retain counsel of choice, a court may accept that waiver under appropriate circumstances. *See Gov't of Virgin Islands v. Zepp,* 748 F.2d 125, 139 (3d Cir. 1984) ("The court should also determine

whether there has been a waiver of the conflict, whether the waiver was effective or whether a waiver was possible."). Nevertheless, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," thus the district court may override a defendant's waiver of his attorney's conflict of interest. *Wheat,* 486 U.S. at 160; *see also Stewart,* 185 F.3d at 122 (citing *Wheat,* 486 U.S. at 164 ("[A] district court has discretion to disqualify counsel if a potential conflict exists even where the represented parties have waived the conflict").

The Supreme Court's holding in *Gonzalez–Lopez* that an erroneous deprivation constitutes a structural error, 548 U.S. at 148, also does not impair the district court's "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat,* 486 U.S. at 163; *see also Gonzalez–Lopez,* 548 U.S. at 151 (stating that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice").

Finally, "representation that constitutes a breach of professional ethics need not be tolerated," *United States v. Rankin*, 779 F.2d 956, 958 (3d Cir. 1986), and a district court may use the applicable Code of Professional Responsibility as a guide to help determine whether disqualification is appropriate, *see, e.g., United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978) ("Accordingly, we hold that when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant"); *United States v. Royce*, 2017 WL 4582794, at *3 (M.D. Pa. Oct. 13, 2017) (using the Pennsylvania Rules of Professional Conduct as a guide to rule on a motion to disqualify). However, "[t]he disqualification of a defendant's chosen counsel need not be ... predicated on a finding of a specific RPC violation." *Voigt,* 89 F.3d at 1076 n. 12.

Accordingly, in addressing this motion, the court will conduct a two-step inquiry: (1) first, it will determine whether the government has satisfied its burden in establishing the presence of an actual or serious potential conflict of interest concerning Attorney Casey's continued representation of the Defendant; and (2) if so, it will determine whether a waiver of conflict or other curative measure is appropriate under the circumstances in lieu of a

formal disqualification. *See United States v. Massimino,* 832 F.Supp.2d 510, 512–13 (E.D. Pa. 2011)).

### III.   **DISCUSSION**

The government argues that Attorney Casey and his firm should be disqualified by the court pursuant to Pennsylvania Rules of Professional Responsibility 1.9 (conflict between former and current clients) and 1.7 (material limitation conflict) as incorporated to this court through Local Rule 83.23.2. Conversely Defendant argues that the present prosecution does not create a conflict between him and Mr. Phillips, and the government has failed to show Attorney Casey is materially limited in representing him.

The government argues that Attorney Casey should be disqualified from representing Defendant because such representation violates Pennsylvania Rule of Professional Responsibility 1.9. In pertinent part, Rule 1.9 states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent.
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in

a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client or when the information has become generally known; or

> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Pa. Rule 1.9.

According to the government, under this rule Attorney Casey is not permitted to represent the alleged art thief, Defendant Joseph Atsus, in the same or a substantially related matter in which he formerly represented the alleged victim owner of the stolen art, Mr. Phillips. Rule 1.9 explanatory Notes 2 and 3, explain the scope of a "matter" and if they are "substantially related." Specifically, Note 3 clarifies that matters are substantially related if "they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." The government argues that Attorney Casey's representation of Defendant and Mr. Phillips is substantially related as both matters involve the theft of *Springs Winter* from the Everhart Museum on November 18, 2005, and Attorney Casey may have learned confidential

information regarding the provenance, authenticity, and value of *Springs Winter* from Mr. Phillips that he could use for Defendant's benefit.

Defendant does not dispute that Attorney Casey's representation of Mr. Phillips is related to the current case but argues that there is still no violation of Rule 1.9 because the government has not established how his and Mr. Phillips interests are materially adverse in the present prosecution. When evaluating whether a former and current client's interest are materially adverse, courts assess whether counsel is (1) negotiating or litigating against the former client; (2) attacking the work done for the former client; or (3) cross-examining the former client. *See* ABA Comm. on Ethics and Pro. Resp., Formal Op. 21-497 (2021). Defendant asserts that here Attorney Casey is not negotiating or litigating against Mr. Phillips through his representation of Defendant in a criminal prosecution where Mr. Phillips is neither a party nor a witness. Attorney Casey is also not attacking the work he did for Mr. Phillips over 18 years ago and Mr. Phillips cannot testify in the present matter because he is deceased.

The government also argues that Attorney Casey and his firm should be disqualified from representing Defendant because such representation violates Pennsylvania Rule of Professional Responsibility 1.7. In pertinent part, Rule 1.7 states:

- 13 -

(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

> (2) the representation is not prohibited by law;

> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

> (4) each affected client gives informed consent.

Pa. Rule 1.7.

According to the government Attorney Casey's representation of Defendant is directly adverse to his former client, Mr. Phillips, because Mr. Phillips is one of Defendant's alleged victims, and his duties to Mr. Phillips as a former client also materially limit his current representation of Defendant. Specifically, the government claims that if Attorney Casey

acquired any confidential information from his representation of Mr. Phillips that is protected under Pennsylvania Rule 1.6 but cannot use or disclose that information to Defendant, Attorney Casey may be material limited in his representation of Defendant. In pertinent part, Rule 1.6 states:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).
> . . .
> (e) the duty not to reveal information to representation of a client continues after the client-lawyer relationship has terminated.

Pa. Rule 1.6

The government again asserts that such confidential information acquired by Attorney Casey could be any information regarding the provenance, authenticity, and value of the *Springs Winter*. The authenticity of the painting has been in doubt since it was stolen from the Everhart. But if Mr. Phillips confided any information regarding *Springs Winter* authenticity to Attorney Casey, the government argues he would be bound under rule 1.6 from not sharing that information with his present client, Defendant Joseph Atsus. Furthermore, the duties owed to a client under Rule 1.6 survive the client's death. Thus, the government claims that Attorney Casey remains duty bound to maintain Mr. Phillips confidences even 16 years after his death

and because he is dead Mr. Phillips is unable to relieve Attorney Casey of his duty of confidentiality.

However, Defendant argues that Attorney Casey's representation of him is not materially limited because the provenance, authenticity, and value of *Springs Winter* are neither in doubt nor at issue in the present prosecution. Defendant asserts that there is documented consensus *Springs Winter* cannot be authenticated. The indictment, likewise, attributes no value to the painting, and does not allege that the painting qualifies as an item of cultural heritage. According to Defendant, through the indictment, the government has affirmed the information provided to the FBI by Mr. Phillips, namely that the painting cannot be authenticated. Indeed, the government has conceded that it will not even argue *Springs Winter* is an authenticate Jackson Pollack painting at trial. (Doc. 127 p. 8 ¶14.) As such Mr. Phillips, is not "affected by [the current litigation]" and "the current representation [does not] cause legal, financial, or identifiable detriment to the former client." ABA Comm. on Ethics and Pro. Resp., Formal Op. 21-497 (2021) (quoting *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 933 (8th Cir. 2014). Nor is such a detriment possible because Mr. Phillips passed away 16 years ago. Thus, according to Defendant it is not possible for Attorney Casey to possess

confidential information acquired from Mr. Phillips that could prejudice him in this proceeding or prejudice Defendant if not used in his defense.

Beyond the rules of Professional Responsibility, the government also claims that Attorney Casey should be disqualified not only for "acting improperly but also failing to avoid the appearance of impropriety." *See Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972). However, Defendant submits a detailed expert report by Professor Jane Campbell Moriarty of Duquesne University School of Law, which highlights the fact that *Richardson* predates both the Model Rules and the Pennsylvania Rules of Professional Conduct. Professor Moriarty, explains that as a result, the "appearance of impropriety' standard, is not the current standard in the Pennsylvania Rules of Professional Conduct for addressing conflicts of interest. *See* The Restatement (Third) of the Law Governing Lawyers (2024), ("[t]he ABA Model Rules of Professional Conduct (1983) explicitly reject the appearance-of-impropriety standard."); Kathleen Maher, *Keeping Up Appearances*, 16 No 1 Prof. Law. 1, 12 (2006) ("When the ABA Ethics 2000 Commission subsequently revised the Model Rules of Professional Conduct in 2002, reference to 'appearance of impropriety' standard was deleted from the Rule 1.9 Commentary altogether because it was 'no longer helpful to the analysis of questions arising under this Rule.'").

Professor Moriarty correctly states that the Pennsylvania Rules follow the template of the Model Rules with respect to successive conflicts and therefore failing to avoid the appearance of impropriety alone is not an adequate basis to disqualify Attorney Casey and deny Defendant his Sixth Amendment right to counsel of his choice.

Professor Moriarty's report also supports Defendant's arguments in finding that (1.) there is no material adversity between Attorney Casey's current client, Defendant, and his now-deceased, former client, Mr. Phillips; (2.) there is no direct adversity between Defendant and Mr. Phillips; (3.) Attorney Casey is not materially limited in his ability to represent Defendant because of his prior representation of Mr. Phillips; (4.) the government has not alleged any facts to support its claim of how confidential information would be used against the alleged interest of Mr. Phillips; and (5.) Attorney Casey's representation of Defendant does not violate either Rule 1.9 or 1.7 of the Pennsylvania Rules of Professional Conduct.

Nonetheless in its reply brief the government argues that Mr. Phillips and Defendant's interest are still directly opposed because Defendant has an interest in the total value of *Springs Winter* being as low as possible because 1) it would lower his sentencing guideline range in the event he is convicted; 2) prevent the government from classifying the painting as major

artwork and specifically charging him with stealing it; and 3) reduce any future restitution or forfeiture amounts awarded to his alleged victims. Whereas Mr. Phillips or at least his estate have an interest in the total value of *Springs Winter* being as high as possible to increase the amount of any restitution awarded.

Furthermore, the government indicates that Mr. Phillips' niece, Jenny Mittleman, may testify about *Springs Winter* at trial requiring Attorney Casey to cross-examine his former client's heir. The government also submits a statement by Ms. Mittleman, a former Deputy General Counsel of the State Bar of Georgia, in response to Professor Moriarty's report, indicating that if the Estate of Arthur Phillips could waive the conflicts alleged herein, she would not do so, and that absent such waiver these conflicts support disqualification of Attorney Casey under Georgia's Rule 1.9.

The government also argues that Attorney Casey's representation of Defendant is still materially limited because his duties to Mr. Phillips additionally prevent him from pursuing an obvious line of defense on his current client's behalf. Specifically, the government asserts that Defendant could cast doubt on its initial investigation into the Everhart theft by showing it failed to subject Mr. Phillips, a subject of the initial investigation who could have stood to gain an "inside job" or insurance scam involving *Springs*

*Winter*, to a polygraph test. However, given Attorney Casey's involvement in the initial investigation the government claims he cannot raise these issues on Defendant's behalf. Therefore, the government warns that all Defendant would have to claim on any appeal or post-conviction motion for relief, is that his Attorney's true allegiance remained with Mr. Phillips making his representation of Defendant less than zealous.

Despite these arguments the court agrees with Defendant. The government has not satisfied its burden in establishing an actual or serious potential conflict between Attorney Casey's present and former clients and to the extent Attorney Casey's representation of Defendant may be limited by his former representation of Mr. Phillips that conflict can be waived by Defendant in lieu of disqualification.

Mr. Phillips is not and cannot be involved in the present proceedings because he is dead. Likewise, the government has conceded that Attorney Casey never represented the Estate of Mr. Phillips. (Doc. 127 p. 10 ¶10.) Even so while Defendant has an interest in the total value of *Springs Winter* being as low as possible to lower his guideline range, prevent future charges, and reduce his restitution exposure, these are all issues that will not be determined at the upcoming trial. Issues of sentencing and restitution will only become relevant if Defendant is convicted and a trial on the current

charges will not affect the government's ability to specifically charge Defendant with stealing *Springs Winter* in the future since a jury at the upcoming trial will not make any findings as to the painting's value or lack thereof. The government has also conceded that victims like Mr. Phillips and his estate are not parties for purposes of loss and restitution even at sentencing. (Doc. 127 p. 20 ¶¶13-15.) Thus, there is no present or potential adversity between Attorney Casey's current and former clients.

Similarly, the mere fact that Ms. Mittleman may testify at trial is not dispositive. Neither Mr. Phillips nor his heirs are parties to this case and the government acknowledges that it does not represent him, his heirs, or any other victim. *Id*.; *see also Ferri v. Ackerman*, 444 U.S. 193, 202-203 (1979) ("As public servants, the prosecutor . . . represent[s] the interest of society as a whole"); *See also* Offices of United States Attorneys, Responses to Frequently Asked Questions, https://www.justice.gov.usao/justice-101faq ("United States Attorneys' Offices do not represent individuals in matters . . . . They only represent the United States, its officers, agencies and employees. . . .").

The court also does not view Ms. Mittlemen's own conflicted statement as an adequate response to Professor Moriarty's carefully reasoned report. Even putting aside Ms. Mittlemen's relation to Mr. Phillips and his estate, this

court also does not sit in Georgia, So, while the court respects Ms. Mittlemen's expertise on Georgia law, it does it see any direct adversity between her, as an individual or representative of Mr. Phillips' estate, and Defendant that would require disqualification under Pennsylvania Rule 1.9 even in the event Attorney Casey has to cross-examine her.

Regarding Rule 1.7 the court is unmoved by the argument that Defendant will be done a disservice if his counsel cannot paint the Everhart theft as an "inside job" orchestrated by Mr. Phillips. While such an argument could cast doubt on Defendant's involvement in the theft of *Springs Winter* – an object he is not specifically charged with stealing—it does not provide a defense as to the theft of *Le Grande Passion* from the Everhart let alone the dozens of other cultural artifacts from a dozen other institutions that he is specifically charged with stealing. Ultimately *Springs Winter* is a small piece in a large puzzle the government must put together at trial, and Attorney Casey's defense strategy cannot reasonably be based on that painting or Mr. Phillips.

Regardless, the court does not consider Attorney Casey's duty to Mr. Phillips to prevent him from questioning the government's failure to subject Mr. Phillips to a polygraph test. The government has conceded that there is no evidence Mr. Phillips either through Attorney Casey or on his own ever

refused to take a polygraph test. (Doc. 127 p. 12 ¶13.) The government admits it failed to follow up with Mr. Phillips about its polygraph request. (*Id*. p. 15 ¶4-6.) As a result, Attorney Casey would not be attacking his own work by challenging the government for not more thoroughly investigating Mr. Phillips with a polygraph test. Moreover, counsel for the other Defendants, who the government does not allege have any limitation regarding Mr. Phillips, are free to challenge the government initial investigation into the Everhart theft and in turn undermine the overall credibility of the investigation before the jury independent of Attorney Casey. The government also admits that there is no evidence Mr. Phillips was involved in theft of Springs Winter. (*Id*. p. 34 ¶17.) Thus, no counsel could argue in good faith to the jury that Mr. Phillips stole *Springs Winter* from the Everhart Museum on November 18, 2005.

That said the court is still concerned that Defendant could challenge the integrity of any conviction from the upcoming trial because of the alleged limitations on Attorney Casey's representation. But disqualification is not the only remedy for this concern.

Although the government argues the obviousness of its position is belied by the fact that neither party was able to cite a single case in support of their respective positions, the court has found an analogous case that

supports Defendant's position and provides an alternative curative measure to the conflicts alleged by the government. *See United States v. Fumo*, 504 F. Supp. 2d 6 (E.D. Pa. 2007). In *Fumo*, the court was also faced with a motion to disqualify defense counsel based on that counsel's prior representation of multiple alleged victims of the Defendant. Specifically, the government motioned to disqualify counsel for Defendant, former State Senator Vince Fumo, who was accused (and later) convicted of *inter alia* defrauding the Pennsylvania State Senate, the Independence Seaport Museum, and a non-profit known as Citizens Alliance, because defense counsel had previously represented all three of those entities. The government argued disqualification was necessary because defense counsel would otherwise be placed in "the position of cross-examining former clients after presumably having learned confidential information during the course of their prior representation, which could be used in furtherance of such cross-examination. In addition, the attorneys would encounter divided loyalties in that they owe a duty to their former clients as well as to their current client[.]" *Id.* at 28.

However, the court disagreed with these arguments because defense counsel never individually represented any of the Pennsylvania Senate employees testifying for the government and subject to cross examination at

trial, only represented the Independence Seaport Museum for two months, and did not gain any information by representing Citizens Alliance that they could not use in cross-examining government witnesses associated with that organization. Here Attorney Casey will also not be required to cross-examine Mr. Phillips because he is dead, only represented him for a few months, and did not learn any information by representing Mr. Phillips he could not use in cross-examining other witnesses because the alleged confidential information he allegedly possesses, *i.e.,* the provenance, authenticity, and value of *Springs Winter,* will not be an issue at this trial.

Moreover, given the hardship imposed by disqualifying defense counsel after that counsel had already begun to prepare for trial the *Fumo* court found that "the equities weigh[ed] in favor of Fumo retaining the counsel of his choice." *Fumo*, 504 F. Supp. at 37. Here the Defendant would face similar hardships. Not only has Attorney Casey already started preparing for trial, but trial has already been scheduled after a year of delays. If the court disqualified Attorney Casey now Defendant would either be forced to retain new counsel on short notice and with little time for new counsel to prepare for trial or again delay trial infringing not only his constitutional right to a speedy trial but also his co-defendants' rights to the same.

The Defendant has also already separately consulted with independent counsel, Attorney Michael A. Comber, of Comber Miller LLC, regarding the conflicts discussed herein and still wishes for Attorney Casey to remain as his defense counsel. *See United States v. West*, 2019 WL 1244799, at *3 (E.D. Pa. Mar. 15, 2019) (citing *Massimino*, 832 F. Supp. 2d at 512-513 (E.D. Pa. 2011) ("Waivers that have been obtained after advice from independent (non-conflicted) counsel are best.")

Accordingly, this court like the court in *Fumo* finds that "the majority of the conflicts presented by the government are relatively minor in nature, are basically uncontested, and can be cured through a waiver colloquy[.]" *Fumo*, 504 F. Supp. 2d at 33. As in *Fumo* the court will follow *Dolan*, 570 F.2d 1177, 1181, (3d Cir. 1978), where the Third Circuit adopted the Fifth Circuit's decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975) (overruled on other grounds), directing as follows:

> [T]he district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital

that the waiver be established by clear, unequivocal, and unambiguous language.

*Dolan,* 570 F.2d at 1181 (quoting *Garcia,* 517 F.2d at 278). The parties will be directed to file proposed questions in line with *Dolan* and *Garcia* and the court will schedule a hearing where it and counsel will question Defendant and place his waiver on the record. Once waived there will be no concern of a conflict regarding Attorney Casey and in turn his law firm, Myers, Brier, & Kelly, LLP, that outweighs Defendant's Sixth Amendment right to counsel of his choice, and this case will proceed as scheduled.

## IV.    CONCLUSION

Based on the aforesaid the government's motion to disqualify defense counsel will be **DENIED** subject to Defendant's adequate waiver of any alleged conflicts faced by his counsel. An appropriate order follows.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 29, 2024**
23-149-01